UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
**FILED**

MAR 25 2021

Nathan Ochsner, Clerk of Court

| | | |
|---|---|---|
| **ELDERICK BRASS,** *Plaintiff,* | § § § | |
| v. | § § | CIVIL ACTION NO. _____ |
| **HARRIS COUNTY HOSPITAL DISTRICT D/B/A HARRIS HEALTH SYSTEM** *Defendant.* | § § § § § | **JURY DEMANDED** |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE DISTRICT JUDGE:

NOW COMES, Plaintiff, Elderick Brass (hereinafter referred to as "Plaintiff" or "Mr. Brass"), complaining of Defendant, Harris County Hospital District d/b/a Harris Health System (hereinafter referred to as "Defendant") and files Plaintiff's Original Complaint asserting claims under the Sex Discrimination in Employment Act, Title VII, Section 504 of the Rehab Act and 28 U.S.C. § 1981 would respectfully show the Court as follows:

### I.   PRELIMINARY STATEMENT

1.  This lawsuit arises from the sexual harassment of one of Plaintiff's co-workers and the subsequent retaliation by Defendant and/or Defendant's employees (Plaintiff's employer and/or Plaintiff's colleagues). Equal to the clear, persistent, outrageous, and unwelcomed behavior of Plaintiff's colleagues was the willful, inexcusable neglect and deliberate indifference of Defendant to the unwanted sexual harassment endured by Plaintiff.

2. It is the legal responsibility of Defendant to promulgate and implement policies and procedures providing, in part, that its employees are not subjected to sexual harassment. Further, it is Defendant's duty to promulgate and implement policies and procedures that do not promote known acts of sexual harassment and retaliation for opposition to that conduct be employees. It is also Defendant's legal obligation to take whatever action is necessary to investigate reports of sexual harassment by employees; stop that harassment once known; and ensure that once sexual harassment is reported, no retaliation or reprisal is permitted against the employee who reports or otherwise opposes such protected conduct. Finally, it is Defendant's responsibility to ensure that employees who have been the subject of sexual harassment are not retaliated against.

3. Plaintiff was compelled to bring this action against Defendant because Defendant failed to ensure that the sexual harassment of its employees was prevented; failed to ensure that the sexual harassment, once known, was properly investigated; and failed to protect the subject of the sexual harassment from retaliation.

4. Defendant is liable for its negligence which led to Plaintiff's sexual harassment because Defendant was of notice of prior sexually harassing behavior committed by Defendant's employee.

## II.     PARTIES, JURISDICTION, AND VENUE

5. Plaintiff, Elderick Brass, is an individual and resident of Harris County, Texas residing at 16627 Loch Maree Lane, Houston, Texas 77084. He is a former employee of Defendant. He worked for Defendant in Houston, Harris County,

Texas until his wrongful termination and all relevant events occurred in Harris County, Texas, which is within the jurisdiction of this court.

6. Defendant Houston County Hospital District d/b/a Harris Health System is a business entity which is a domestic corporation doing business in Houston, Harris County, Texas. Defendant may be served at 1504 Taub Loop, Houston, Texas 77030.

7. This court has jurisdiction to hear the merits of Plaintiff's sexual harassment, sex discrimination, and retaliation claims conferred on this Court by Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e *et, seq.claim*. The court further has supplemental jurisdiction as to any remaining related state claims.

8. All the acts alleged herein occurred in Houston, Harris County, Texas and are within the jurisdiction and district of the court.

### III. ADMINISTRATIVE PREREQUISITES MET

9. Plaintiff filed Charge Number: 460-2019-05247 with the EEOC alleging continuing action of sexual harassment. Upon request of Plaintiff, his notice of "Right to Sue" was issued for Plaintiff, and Plaintiff, thereafter, was able to file a lawsuit on his Title VII claims. This case is filed within ninety (90) days of Plaintiff's receipt of his right to sue from the EEOC.

10. All potential administrative remedies have been exhausted and prerequisites to litigation have been met.

### IV. FACTUAL BACKGROUND

11. Mr. Brass was hired as a full-time Security Officer II for the Department of Public Safety at Ben Taub Hospital or about June 7, 2018. His job responsibilities included

patrolling, protecting, and securing all Harris Health buildings and grounds; promoting safety and security at all locations; and subduing unruly visitors, employees, and patients. Mr. Brass earned about $35,048.00 annually.

12. Defendant is a healthcare system that operates as the public safety net healthcare provider for Harris County residents. Defendant is supposed to an equal opportunity employer that maintains a discrimination and retaliation-free workplace.

13. Defendant's policies explicitly prohibit discrimination based on an individual's sex, race, color, religious creed, age, national origin, disability, or other legally protected characteristic under federal and state law.

14. Defendant's policies also indicate that Defendant is committed to providing a work and learning environment free from inappropriate conduct that is sexual in nature.

15. At the beginning of his employment, Mr. Brass did not have any issues with his employer, management, and colleagues. Further, he did not have any performance issues.

16. After a few months of employment, a female staff member, Sabrina Houston (hereinafter referred to as "Ms. Houston") expressed an interest in Mr. Brass. Soon, Ms. Houston was texting and calling Mr. Brass incessantly. Mr. Brass' peaceful and worry-free employment all changed in April 2019.

17. Ms. Houston's apparent interest in Mr. Brass evolved from texting and calling to making sexual advances and encouraging a sexual relationship. The sexual advances were implicit and explicit propositions and/or offers to engage in sexual activity.

18. On or about April 13, Ms. Houston approached Mr. Brass at the emergency center patient information desk asking why he was not returning her phone calls. Ms. Houston expressed that she was in love with Mr. Brass and wanted to have a sexual relationship.

19. Mr. Brass refused Ms. Houston's confessions of love and demands to engage in sexual relationship. He informed Ms. Houston that he was a married man, and Ms. Houston's sexual advances were unwelcomed and unwanted. When Plaintiff did not participate in or entertain Ms. Houston's sexual advances, she threatened him.

20. Mr. Brass discussed the inappropriate interactions with his direct supervisor, Steve Brown, Security Manager (hereinafter referred to as "Mr. Brown"). Specifically, Mr. Brass told Mr. Brown that Ms. Houston was sending inappropriate text messages, calling incessantly, stalking Mr. Brass in the parking lot, and demanding a sexual relationship.

21. Mr. Brown took Mr. Brass' complaint in jest and suggested to Mr. Brass that Ms. Houston was an attractive woman. Mr. Brass indicated that he had no interest in pursuing a sexual relationship with Ms. Houston.

22. Mr. Brass just wanted Ms. Houston to maintain professionalism in the workplace and respect the face that he was married.

23. Mr. Brown informed Ms. Houston of the conversation Mr. Brown had with Mr. Brass to gather more information.

24. On or about April 15, 2019, Mr. Brass was walking through the information area. Ms. Houston was present in the area with a group of other colleagues. As Mr. Brass approached the group, Ms. Houston broke away and confronted Mr. Brass in front

of everyone. She put her hands in his face and threatened to physically harm Mr. Brass for telling colleagues and management that she wanted a sexual relationship with Mr. Brass.

25. On or about April 16, Mr. Brass again reported the inappropriate sexual advances to his supervisor, Mr. Brown. Mr. Brass told his supervisor, Mr. Brown, about the hostile encounter the day before with Ms. Houston.

26. Mr. Brass indicated that Ms. Houston's behavior was becoming more pervasive, and he needed Mr. Brown to intervene. Mr. Brown told Plaintiff that that he would handle the complaint against Ms. Houston.

27. Defendant's sexual harassment policy defines sexual harassment as:

    *Sexual harassment includes unwelcome sexual advances for sexual favors, verbal or physical conduct of a sexual nature when:*

    a. *Submission to such conduct is made either explicitly or implicitly a term or condition of employment;*

    b. *Submission to or rejection of such conduct is used as a basis for evaluation in making personnel or academic decisions affecting that individual; or*

    c. *Such conduct has the purpose or effect of unreasonably interfering with an individual's performance as an administrator or staff, or creating an intimidating, hostile, or offensive environment.*

28. Defendant's sexual harassment policy gives examples of behavior that could be considered sexual harassment as:

    a. *Any physical contact of a sexual nature including touching, patting, hugging, or brushing against a person's body;*

    b. *Any explicit or implicit propositions or offers to engage in sexual activity;*

    c. *Any comments of a sexual nature or content, including sexually explicit statements, questions, jokes, or anecdotes; remarks of a sexual nature about a person's clothing or body; remarks about sexual activity; speculation about sexual experience; exposure to sexually oriented graffiti, pictures, posters, or materials;*

    d. *Physical interference with or restriction of an individual's movements;*

    e. *Making sexual advances, requesting sexual favors if submission to or rejection of such conduct is the implicit or explicit basis for imposing or granting terms and conditions of employment;*

    f. *Making sexual advances, requesting sexual favors, or otherwise discriminating on the basis of gender in a manner that unlawfully creates an intimidating, hostile, or offensive working environment or that otherwise unlawfully interferes with an individual's work performance;*

    g. *Engaging in any sexual contact against a person who has not given consent or committing any act that is sexual in nature or sexual assault, public sexual indecency, or sexual abuse against a person who has not given consent; or*

    h. *Acting, recommending action, or refusing to take action in supervisory position in return for sexual favors, or as a reprisal against a person who has rejected, reported, verbally complained, filed a complaint regarding, or been the object of sexual harassment.*

29. Defendant's policy states that any supervisor who gains knowledge of any possible violation of the sexual harassment policy, must report the incident within three (3) working days to Human Resources – Employee Relations Manager. The employee that is the victim of sexual harassment may, but is not required to, file a formal complaint with Employee Relations.

30. Mr. Brass trusted that Mr. Brown would conduct a proper investigation in accord with applicable policy and did not get a chance to follow up regarding the investigation.

31. On or about April 20, 2019, Mr. Brass encountered an upset patient who was discharged after the individual failure to comply with staff and attitude towards staff. The hospital nurses indicated that the patient was discharged, and he needed to be removed from emergency center.

32. The patient was upset with the hospital nurses decision and caused a disturbance in the emergency center.

33. He used his cell phone and began recording the hospital nurses and other events unfolding in the emergency center. The patient also captured protected health information of other patients while recording the hospital nurses.

34. Defendant's policy permits patients, visitors, and employees to possess cameras/camcorders on Defendant's property as long as the patients' rights of privacy have not been violated, and the equipment has been cleared by security as no potential threat to the pavilion operations.

35. The individual patient was asked to stop recording to protect the protected health information of the patients and HIPAA laws, but the individual was visibly upset, and he refused. Hospital nurses paged Mr. Brass to escort the agitated patient from the emergency center.

36. Mr. Brass escorted the patient from the emergency center waiting room to the patient information area. The patient began recording Mr. Brass. Mr. Brass attempted to explain to the patient that he could not record in the area because of

the protected patient information in the area. Mr. Brass also explained that prospective patients are giving medical staff their medical information for treatment.

37. The patient still did not comply. The patient also indicated that he was not leaving and that Mr. Brass should call law enforcement. Mr. Brass dispatched the law enforcement officer on duty for assistance. The patient continued regarding Mr. Brass and the emergency center triage area.

38. The law enforcement officer arrived at the area and attempted to deescalate the patient. The officer left Mr. Brass and the patient to speak with the hospital nurses regarding the patient's discharge.

39. After the law enforcement officer left, the patient resumed recording. This time, the patient kept coming closer to closer to Mr. Brass' face. Mr. Brass asked the patient to stop recording, but the patient refused to comply. Instead, the patient kept motioning the cell phone in Mr. Brass' face.

40. Mr. Brass attempted to move the cell phone out of his face, but he accidentally knocked the phone from the patient's hand. The patient picked up the cell phone and continued recording. The law enforcement officer returned and escorted the patient out of the facility.

41. On or about April 20, 2019, the same day, Mr. Brown received a text message from the law enforcement officer stating, "Just giving you [Mr. Brown] a heads up. Before you are caught off guard on Monday, I do have to do a report this morning and I have to list Brass as the suspect."

42. Mr. Brown called another officer and informed him to call Mr. Brass, have him [Mr. Brass] finish his report, and leave for the day. Mr. Brass was told that he should not return to work until he speaks with Mr. Brown or Department of Public Safety director because Mr. Brass was placed on investigative suspension.

43. Although Mr. Brass exercised good judgment in protecting protected healthcare information, on or about April 23, 2019, Defendant terminated Mr. Brass for accidentally knocking the patient's cell phone out of the patient's hand.

44. Defendant asserts that Mr. Brass failed to exercise good judgment and deescalate the situation with a volatile and disgruntled patient; however, Mr. Brass adhered to established policy in an effort to protect sensitive information and secure his job post. This incident was not egregious enough to result in termination.

45. Mr. Brass asserts that Defendant retaliated against him by terminating him for an isolated incident as a pretext for his complaints in opposition to discrimination and sexual harassment that were not properly reported or investigated by Mr. Brass' supervisor.

46. Mr. Brass asserts claims based on discrimination, harassment, and retaliation for violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

## V. CAUSES OF ACTION

### A. Discrimination Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §200e *et seq.*, (Protecting Employees from Sexual Harassment) and/or 42 U.S.C. § 1981

47. Plaintiff alleges and reincorporates the allegations contained in Paragraphs 1 through 46 by reference as if fully restated herein.

48. Plaintiff was subjected to unwelcomed sexual harassment in the workplace from Ms. Houston, which unreasonably interfered with Plaintiff's work performance. Mr. Brown had the authority to correct the conduct and had actual knowledge and/or should have known of Ms. Houston's sexually harassing behavior prior to Plaintiff's reports, and then failed to take immediate and appropriate correct action as required by law.

49. The harassment to which Plaintiff was subjected after he reported the harassment from Ms. Houston was unwelcomed, abusive, and humiliating.

50. Plaintiff would show that Defendant, by and through its agent(s), was negligent in the creation of and/or continuation of a hostile work environment.

51. Defendant, by failing to investigate the sexual harassment claims, allowed Ms. Houston to intentionally engage in unlawful employment practices involving Plaintiff.

52. The harassment of which Plaintiff complains was severe and pervasive and thereby affected a term, condition, or privilege of his employment and created an abusive and hostile work environment.

53. Defendant, by failing to exercise reasonable care to prevent and cure allegations of sexual harassment, allowed Ms. Houston to sexually harass Plaintiff, as described above in violation of 42 U.S.C. 2000e *et seq*.

54. Plaintiff maintains that Defendant retaliated against him by terminating him for an isolated incident as a pretext for his complaints in opposition to sexual harassment that were not properly reported or investigated by Defendant's agent(s).

55. As a direct and proximate result of Ms. Houston's conduct in violation of 42 U.S.C. §2000e *et seq.*, Plaintiff suffered, and will continue to suffer, economic and actual damages, including past and future lost income, back wages, interest on back pay and front pay, future wages or front pay, lost earnings in the past and future, lost benefits under the contract or employment relationship, employment benefits in the past, and employment benefits in the future, for which he pleads to be justly compensated.

56. Plaintiff also incurred other actual damages as a result of Defendant's unlawful conduct, including by not limited to: past and future pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, injury to professional standing, injury to character and reputation, and other pecuniary and non-pecuniary losses.

### B. Discrimination Under Title VII of the Civil Rights Act of 1964 and/or 42 U.S.C. § 1981

57. Plaintiff alleges and reincorporates the allegations contained in Paragraphs 1 through 46 by reference as if fully restated herein.

58. Defendant's actions, as described herein, constitute unlawful discrimination, harassment, and retaliation on the basis of Plaintiff's sex, race, color, religious creed, age, national origin, disability, or other legally protected characteristic under federal and state law in violation of Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. § 1981, by subjecting Plaintiff to the unlawful discriminatory and retaliatory actions described above.

59. Plaintiff maintains that Defendant retaliated against him by terminating him for an isolated incident as a pretext for his complaints in opposition to sexual

discrimination that were not properly reported or investigated by Defendant's agent(s) because Plaintiff was a male reporting unwelcomed sexual harassment by a female employee.

60. As a result Defendant's unlawful discriminatory and retaliatory actions as described above, Plaintiff suffered, and will continue to suffer, economic and actual damages, including past and future lost income, back wages, interest on back pay and front pay, future wages or front pay, lost earnings in the past and future, lost benefits under the contract or employment relationship, employment benefits in the past, and employment benefits in the future.

61. Plaintiff also incurred other actual damages as a result of Defendant's unlawful conduct, including by not limited to: past and future pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, injury to professional standing, injury to character and reputation, and other pecuniary and non-pecuniary losses.

### C. Retaliation Under 42 U.S.C. §§1981 and 2000e, et. seq.

62. Plaintiff alleges and reincorporates the allegations contained in Paragraphs 1 through 46 by reference as if fully restated herein.

63. Defendant's actions, as described herein, discriminated and retaliated against Plaintiff in violation of Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866, 42 U.S.C. § 1981, by subjecting him to the unlawful discriminatory and retaliatory actions described above, including termination after his complaints.

64. Defendant retaliated against Plaintiff because of his complaints of and opposition to Plaintiff's sex, race, color, religious creed, age, national origin, disability, or other legally protected characteristic under federal and state law.

65. Plaintiff maintains that Defendant retaliated against him by terminating him for an isolated incident as a pretext for his complaints in opposition to sexual harassment that were not properly reported or investigated by Defendant's agent(s). The only logical reason for Plaintiff's termination was a cover up by Defendant for failing to properly investigate reports of sexual harassment.

66. As a result Defendant's unlawful discriminatory and retaliatory actions as described above, Plaintiff suffered, and will continue to suffer, economic and actual damages, including past and future lost income, back wages, interest on back pay and front pay, future wages or front pay, lost earnings in the past and future, lost benefits under the contract or employment relationship, employment benefits in the past, and employment benefits in the future.

67. Plaintiff also incurred other actual damages as a result of Defendant's unlawful conduct, including by not limited to: past and future pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, injury to professional standing, injury to character and reputation, and other pecuniary and non-pecuniary losses.

## VI. DAMAGES

68. As a result of Defendant's unlawful conduct, Plaintiff suffered economic and actual damages, including past and future lost income, back wages, interest on back pay and front pay, future wages or front pay, lost earnings in the past and future, lost

benefits under the contract or employment relationship, employment benefits in the past, and employment benefits in the future.

69. Plaintiff also incurred other actual damages as a result of Defendant's unlawful conduct, including by not limited to: past and future pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, injury to professional standing, injury to character and reputation, and other pecuniary and non-pecuniary losses.

## VII. PUNITIVE DAMAGES

70. Defendant is liable for punitive damages on account of its agent(s) completely willful and reckless disregard of Plaintiff's rights under Title VII. Defendant's conduct was wanton, willful, reckless, and/or intentional, to cause substantial harm or injury, rendering the award of punitive damages appropriate.

## VIII. JURY TRIAL

71. Plaintiff demands a trial by jury on all issues that can be tried by a jury.

## IX. PRE-TRIAL INTEREST

72. Plaintiff also seeks pre-judgment interest at the maximum legal rate.

73. Plaintiff is entitled to reasonable and necessary attorney's fees, if any, pursuant to 42 U.S.C.§ 2000e and 42 U.S.C. §1988 for the preparation and trial in this case and various stages of appeal, if any, including additional attorney's fees in the event it is necessary to collect this amount of money once a judgment becomes final.

## X. PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that Defendant be cited to appear and answer herein, and that on final trial, Plaintiff have and recover the following relief:

a. Judgment against Defendant for actual and consequential damages, including lost wages and benefits (both back pay and front pay), and damage to earning capacity, the sum to be determined at trial;

b. Additional damages as allowed by law;

c. Reinstatement;

d. The costs and expenses incurred by Plaintiff in seeking new employment;

e. Pre-judgment and post-judgment interest at the maximum legal rate;

f. Attorneys' fees (if applicable);

g. Experts' fees (if applicable)

h. All court costs of court; and

i. Any other relief to which Plaintiff may be justly entitled in equity and in law.

Respectfully Submitted,

Elderick Brass
16627 Lock Maree Lane
Houston, Texas 77084
[insert phone number]
[insert email]
*Pro se*

*/s/ Elderick B.*

281-871-0536

3/25/21